**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**EASTERN DIVISION**

| | |
|---|---|
| CORNWELL QUALITY TOOLS CO., <br><br> Plaintiff, <br><br> v. <br><br> KELLY A. WALTER <br><br> and <br><br> KAYLA B. WALTER <br><br> Defendants. | Case No.: <br><br><br><br> COMPLAINT FOR INJUNCTION AGAINST TRADEMARK INFRINGEMENT UNFAIR COMPETITION AND DECEPTIVE TRADE PRACTICES |

Plaintiff, Cornwell Quality Tools Co., for its Complaint against the Defendants, Kelly A. Walter and Kayla B. Walter, states and alleges as follows:

**PARTIES**

1.     Plaintiff, Cornwell Quality Tools Co. ("Plaintiff") is a citizen of the State of Ohio, being an Ohio corporation with its office and principal place of business in Wadsworth, Ohio.

2.     Defendants Kelly A. Walter and Kayla B. Walter ("Defendants") are citizens of the State of North Dakota, residing in Fargo, Cass County, North Dakota.

**JURISDICTION AND VENUE**

3.     This is an action for federal trademark infringement, unfair competition, and false designation of origin, and arises under the trademark laws of the United States, namely, Title 15 of the United States Code and, more particularly, 15 U.S.C. § 1114, 15 U.S.C. §§ 1116 -

1118, inclusive; 15 U.S.C. § 1121 and 15 U.S.C. § 1125(a); and related causes of action under the laws of the State of North Dakota and common law arising from the wrongful use by Defendants of certain of Plaintiff's registered trademarks as described below.

4.      This Court has original jurisdiction under the provisions of 15 U.S.C. § 1114, 15 U.S.C. § 1121, 15 U.S.C. § 1125(a), 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a), in that the claims arise under the trademark laws of the United States, 15 U.S.C. § 1051, *et seq.*

5.      The Court also has original jurisdiction under 28 U.S.C. §§ 1338(b) with respect to claims arising under common law rights and claims arising under the laws of the State of North Dakota, in that such claims are joined with the substantial and related claim under the trademark laws of the United States, 15 U.S.C. §§ 1051, *et seq.*

6.      Supplemental federal jurisdiction is also invoked under 28 U.S.C. § 1367(a) with respect to all other claims that are so related to the claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution.

7.      Venue for these claims is proper in this Court under 28 U.S.C. § 1391(b) in that Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## FACTS

**Cornwell's Trademarks:**

8.      Plaintiff is, and for many years prior to the acts herein complained of has been, engaged in the manufacture and sale in interstate commerce of high-quality precision automotive tools and equipment, more specifically, mechanic's hand-tools and related equipment (the

"Products") and the provision of related technical and distribution services (the "Services") under one or more of the following trademarks which are registered in the U.S. Patent and Trademark Office (the "Marks"):

| **Mark** | **Registration No.** | **Registration Date** | **Date of First Use in Interstate Commerce** |
|---|---|---|---|
|  Cornwell | 747,209 | 3/26/1963 | 1962 |
| CORNWELL | 747,210 | 3/26/1963 | 1920 |
|  | 1,139,026 | 8/26/80 | 1963 |
|  | 1,150,695 | 4/7/81 | 1966 |
|  | 1,163,457 | 8/4/81 | 1972 |
| The Choice Professionals | 1,276,492 | 5/1/84 | 1966 |
| The Choice of Professionals | 1,276,565 | 5/1/84 | 1966 |
| The Choice of Professionals | 2,497,549 | 10/16/01 | 1968 |
| TECH-CREDIT | 2,514,179 | 12/04/2010 | 2001 |

| Mark | Registration No. | Registration Date | Date of First Use in Interstate Commerce |
|---|---|---|---|
|  | 2,533,695 | 1/29/02 | 1996 |
|  | 3,456,834 | 7/1/08 | 1979 |
|  | 3,470,727 | 7/22/08 | 1996 |
| The Choice of Professionals | 3,494,755 | 9/2/08 | 1979 |
| Cornwell | 3,548,901 | 12/23/08 | 1979 |
|  | 3,855,015 | 6/1/09 | 2009 |
|  | 3,920,502 | 6/1/09 | 2010 |
| Pro Series | 4,449,249 | 12/10/2013 | 2013 |
| IBN | 4,645,512 | 11/25/2014 | 2014 |
| IRON MAN BUSINESS NETWORK | 4,649,553 | 12/2/14 | 2014 |
|  | 4,898,747 | 2/9/2016 | 1995 |
| CORNWELL CUSTOM | 4,926,021 | 3/29/2016 | 2009 |

| Mark | Registration No. | Registration Date | Date of First Use in Interstate Commerce |
|---|---|---|---|
| | | | |

The Marks have been used continuously in interstate commerce in connection with the Products beginning at least as early as the dates set forth above.  Variations of the trade name "Cornwell" have been used in commerce since 1920 and under previous registrations.  All of the Marks are currently registered, and most of the registrations are incontestable pursuant to 15 U.S.C. § 1065.

9.     The Marks were developed by Plaintiff to distinguish the Products from tools and related items made and sold by others by, among other things, prominently displaying the Marks on the Products themselves, on containers and packaging used for the Products, on trucks and delivery vehicles used with the Products and Services, on uniforms and other forms of identification used by distributors and dealers delivering the Products and Services, with the Products and Services, and in trade and other advertising appearing in journals and periodicals distributed throughout the United States.

10.     Plaintiff's Products and Services are sold primarily to the professional mechanics' automotive tools and equipment market ("the Market"), through independent dealers, such as Defendants, who purchased the Products and Services from Plaintiff.

11.     There are dealers such as Defendants in the Market who operate through other companies similar to Plaintiff, or operate entirely independently, selling goods and services obtained from various sources.

12.     High-quality precision mechanics' automotive tools and equipment and related Services sold under the Marks are recognized by virtually all persons in the Market as being Plaintiff's Products and Services originating from Plaintiff.

13.     Plaintiff has used the Marks continuously on and/or in connection with the Products and Services since their respective inception, and each have acquired strong secondary meaning as being indicative of the source of high-quality, precision mechanics' automotive tools and equipment and related Services.

14.     As a result of Plaintiff's expenditure of a considerable amount of money and continuously marketing its Products and Services in connection with the distinctive and familiar Marks, the consuming public has come to recognize all mechanics' tools and related items and Services sold in connection with the Marks as originating from or otherwise approved or sponsored by or affiliated or connected with Plaintiff.

15.     On or about November 19, 2013, Plaintiff and Defendants entered into a written agreement entitled Cornwell Quality Tools Company Dealer Franchise Agreement ("Dealer Agreement").   A true and correct copy of the Dealer Agreement between Plaintiff and Defendants is attached as Exhibit "A," and incorporated by reference.  The Dealer Agreement provided that Defendants were to have a non-exclusive dealership of Plaintiff's Products and Services.   Pursuant to the terms of this Dealer Agreement and through such relationship, Defendants distributed Plaintiff's Products and Services bearing the Marks and had the non-exclusive right to use the Marks in connection with the distribution of said Products and Services, including use of the Marks in sales and promotional materials, on delivery trucks,

uniforms, containers, packaging and other items used in connection with the distribution of the Products and Services.

16.     Under the Dealer Agreement, Plaintiff agreed to sell and Defendants agreed to buy, market and sell Plaintiff's Products and Services in part of North Dakota, as set forth in the map following page 9 of the Dealer Agreement.

17.     In the Dealer Agreement, at Page 3, Paragraph 10, Defendants recognized the validity of the Marks and agreed that they did not have, nor would acquire, any interest in the Marks.  Defendants further agreed not to do anything that would impair Plaintiff's rights, title or exclusivity in the Marks.   The Dealer Agreement also provided in pertinent part at Page 7, Paragraph 17:

> Upon termination, Dealer [Defendants] shall immediately discontinue use of the marks and shall immediately remove all reference to the marks by way of signs or otherwise and any terms confusingly similar from its property and Dealer [Defendants] shall discontinue reference to the marks from its advertising media. It is understood and agreed by Dealer [Defendants] that, upon termination, all rights pertaining to the marks shall automatically revert to Cornwell.

**Defendants's Infringing Conduct:**

18.     On August 10, 2022, Plaintiff sent Defendants a Notice of Intended Termination of Defendants' Dealer Agreement, to be effective on November 13, 2022, if the stated defaults were not cured.  A true and correct copy of the notice is attached as Exhibit B and incorporated by this reference.   The defaults were not cured and the termination became effective on November 13, 2022.

19.     As a result, under Paragraph 17 of the Dealer Agreement, all of Defendants' non-exclusive rights to use the Marks terminated as of November 13, 2022.  Defendants were advised that after that date, they must cease to hold himself out as a Cornwell dealership and must remove all uses of the Cornwell trade name and trademarks from their truck, clothing, stationery, business cards, etc.

20.     Defendants nevertheless continued to use the Marks in the sale of their inventory of tools and related equipment, without Cornwell's knowledge or consent.  Upon learning of the infringement, a demand that Defendants cease and desist was immediately sent to Defendants by Plaintiff's Ohio counsel, on February 1, 2023.  A true and correct copy of the first demand letter is attached as Exhibit C and is incorporated by reference.

21.     Defendants did not respond to the first demand letter.

22.     Plaintiff consequently was required to engage North Dakota counsel, who sent a further demand letter to Defendants on March 14, 2023.  A true and correct copy of North Dakota counsel's demand letter is attached as Exhibit D and is incorporated by reference.

23.     Defendants never responded to North Dakota counsel's demand letter.

24.     There is an active national market for used tool trucks, including a website for that purpose, tooltrucks.com.

25.     Consequently, unless enjoined, Defendants may well sell the truck with the Marks to a third party selling in the Market who is not a Cornwell dealer, who may likely then operate the truck in commerce with the Marks, giving the misimpression that the third party is affiliated with Cornwell.  Cornwell would then be forced to try to find the third party and seek

enforcement of the Marks against it.  Since such trucks are often marketed nationally online, the third-party buyer could be anywhere in the country.

26.     Defendants are thus continuing to use the Marks and is engaging in other infringing business practices in an attempt to pass himself off as if they remain affiliated with Plaintiff and in a manner calculated to deceive Plaintiff's customers and members of the general public, or to create the likelihood that a third party who buys the truck with the Marks on it will deceive the public.

27.     The natural, probable and foreseeable result of Defendants' wrongful misconduct, as alleged above, has been to deprive Plaintiff of the benefits of using, selling, and licensing its Marks.  Plaintiff has also suffered a substantial loss of goodwill.  Defendants' conduct has also created a likelihood of confusion between Plaintiff's products and Defendants' products or those of a third party who may buy the truck, and has injured Plaintiff's relations with present and prospective customers.

28.     On information and belief, Plaintiff alleges that unless enjoined by this Court, Defendants intends to continue their course of conduct and to wrongfully use, infringe upon, and otherwise profit from Plaintiff's Marks.

29.     As a direct and proximate result of the acts alleged above, Plaintiff has already suffered irreparable injury, and lost profits.  Plaintiff has no adequate remedy at law to redress all of the injuries that Defendants has caused and intends to cause by their conduct.  Plaintiff will continue to suffer irreparable damage and injury until Defendants' actions alleged above are enjoined by this Court.

## FIRST CLAIM FOR RELIEF

### (Infringement of Federally Registered Trademarks - 15 U.S.C. § 1114)

30.     Plaintiff realleges and incorporates by this reference each and every allegation contained in paragraphs 1-29 of this Complaint as if fully set forth.

31.     The actions of Defendants described herein constitute infringement of the Marks in violation of Section 32(b) of the Lanham Act, 15 U.S.C. § 1114.  Despite termination of Defendants' Dealer Agreement, and letters to Defendants notifying Defendants that they no longer had any rights whatsoever to continue to use the Marks, and despite threat of legal action, Defendants continue to so use the Marks without authorization in connection with the promotion and distribution of goods and services in and affecting interstate commerce.

32.     Goods and services that may be sold in connection with the Marks are sold in and/or otherwise affect interstate commerce to the same consuming public and travel through the same trade channels as Plaintiff's Products and Services.

33.     Goods and services that may be sold in connection with the Marks may be substantially identical to and compete directly with Plaintiff's Products.

34.     Defendants have willfully and knowingly infringed and will continue to further infringe the rights of Plaintiff and its federally registered Marks, in violation of 15 U.S.C. § 1114, as a result of the continued, unauthorized use of the Marks, with the intention of deceiving and misleading the consuming public, and by wrongfully trading on the goodwill and reputation of Plaintiff.

35.     The use by Defendants of the Marks is likely to cause confusion or mistake or deception of purchasers as to the source, origin, sponsorship, affiliation, approval or connection

Plaintiff's goods and services with those of a third party who buys Defendants' truck with Marks on it.

36.     By their wrongful acts, Defendants have caused and are likely to continue to cause great injury and damage to Plaintiff which cannot now be accurately computed and, unless restrained by the Court, Defendants will continue to cause irreparable injury and damage to Plaintiff and to the goodwill associated with Plaintiff's Marks.

37.     Due to Defendants' prior agreement with Plaintiff, and the notices sent to Defendants, Defendants knew or should have known that they had no legal basis to use Plaintiff's Marks.  Despite this knowledge, Defendants willfully and deliberately infringed on Plaintiff's Marks.

38.     As a result of Defendants' willful and deliberate infringement of Plaintiff's Marks, Plaintiff requests judgment granting preliminary and permanent injunctions, together with its costs of suits and reasonable attorney's fees pursuant to 15 U.S.C. § 1117(b).

## SECOND CLAIM FOR RELIEF

### (False Designation of Origin and Unfair Competition under the Lanham Act – 15 U.S.C. § 1125(a))

39.     Plaintiff realleges and incorporates by this reference each and every allegation contained in paragraphs 1-38 of this Complaint as if fully set forth.

40.     After November 13, 2022, Defendants' use of the Marks and/or or substantially similar Marks in connection with the promotion and distribution of his goods and services in commerce has caused or is likely to cause confusion, mistake and deception among consuming public as to the origin, sponsorship, and/or approval of the products and services of a third party who buys Defendants' truck with the Marks on it.

41.     As a result of Defendants' intentional, wrongful acts, purchasers have purchased or are likely to purchase a third party's goods and services, thereby injuring Plaintiff by diversion of sales to Defendants.

42.     Plaintiff has no control over the quality of the goods and services sold by Defendants or any third party who may buy the truck with the Marks on it.  Because of the confusion as to the origin, sponsorship or approval of other goods and services engendered by Defendants, Plaintiff's extensive and valuable goodwill is at the mercy of the Defendants and a third party who buys the truck with the Marks still on it, and Plaintiff will suffer irreparable harm should such false representation be allowed to occur.

43.     Such acts by Defendants were willful and deliberate, and designed to specifically trade upon the enormous and valuable goodwill of Plaintiff.

44.     By their wrongful acts, Defendants have caused and will continue to cause great harm and damage to Plaintiff which cannot now be assessed or computed and, unless restrained by the Court, will continue to cause irreparable injury and damage to Plaintiff and to the goodwill associated with the Marks.

45.     As a direct and proximate result of the foregoing, Plaintiff has and will continue to suffer damages according to proof at trial.  Consistent with 15 U.S.C. § 1117(a), among other remedies, Plaintiff is entitled to injunctive relief.

46.     Due to Defendants' prior agreement with Plaintiff, and the notices sent to Defendants, Defendants knew or should have known that they had no legal basis to use Plaintiff's Marks.  Despite that knowledge, Defendants willfully violated 15 U.S.C. § 1125(a).

**THIRD CLAIM FOR RELIEF**
**(Unjust Enrichment)**

47.    Plaintiff realleges and incorporates by this reference each and every allegation contained in paragraphs 1-46 of the Complaint as if fully set forth.

48.    This claim arises under the principles of equity concerning unjust enrichment and misappropriation of rights.

49.    Plaintiff has expended a considerable amount of time, money and effort developing and promoting the Marks for Plaintiff's Products and Services.

50.    Until recently, Defendants had a non-exclusive dealership of Plaintiff's Products and Services.   Through such relationship, Defendants have received from Plaintiff and distributed to Defendants' customers sales and promotional material as well as Plaintiff's goods and services bearing the Marks.

51.    Through its relationship with Plaintiff, Defendants acquired actual knowledge that the consuming public recognizes mechanics' tools and related items sold under Marks as emanating from Plaintiff.

52.    The unauthorized use of the Marks by Defendants for their goods and services has caused and is likely to cause confusion with Plaintiff's Products and Services bearing the Marks.

53.    Defendants have acted unfairly in using the Marks.

54.    Defendants have taken and will continue to take unfair advantage of the goodwill and business value developed by Plaintiff in the Marks.

55.    Defendants have misappropriated and will continue to misappropriate and illegally exploit the valuable property rights and goodwill of Plaintiff and its Marks.  As a result of such misappropriation, Plaintiff will suffer irreparable injury to its property and goodwill, and Defendants will be unjustly enriched thereby to the detriment of Plaintiff, entitling Plaintiff to injunctive relief and its costs of suit.

## FOURTH CLAIM FOR RELIEF
### (Deceptive Trade Practices under N.D.C.C. chapters 47-22 and 47-25)

56.    Plaintiff realleges and incorporates by this reference each and every allegation contained in paragraphs 1-55 of this Complaint as if fully set forth.

57.    The actions of Defendants described herein constitute deceptive trade acts and practices in violation of North Dakota law, including in particular N.D.C.C. chapters 47-22 and 47-25.  Without authorization, Defendants have intentionally sold and advertised their goods and services under the Marks so as to pass off their goods and services as those of Plaintiff, to confuse and deceive purchasers as to the source, sponsorship, approval or certification of, or the affiliation, connection or association with Defendants' goods and services; and to obtain the acceptance of Defendants' goods and services based on the reputation and good will of Plaintiff and its high-quality Products and Services sold in connection with the Marks.

58.    As a direct and proximate result of Defendants' wrongful conduct, Defendants have caused and will cause confusion, mistake and deception among the purchasing public as to the source of Defendants' goods and services and Defendants have received and will continue to receive sales and profits generated from the strength of Plaintiff's success, goodwill and customer recognition.  As a result of these acts of infringement and unfair competition, Plaintiff

has suffered and will continue to suffer irreparable injury and damage to its business relationships with its current and prospective customers, including but not limited to lost profits, lost reputation and loss of goodwill.

59.    Plaintiff is accordingly entitled to injunctive relief.

## FIFTH CLAIM FOR RELIEF
### (Common Law Trademark Infringement and Unfair Competition)

60.    Plaintiff realleges and incorporates by this reference each and every allegation contained in paragraphs 1-59 of this Complaint as if fully set forth.

61.    Plaintiff has used the Marks in connection with the distribution and sales of the Products and Services in North Dakota and throughout the United States and, as such, Plaintiff owns and enjoys common law rights in North Dakota and throughout the United States in and to the Marks which are superior to any rights which Defendants may claim in and to the Marks in any form or style with respect to the manufacture, sale and distribution of mechanics' tools and related goods and services.

62.    Use of the Marks by Defendants, or by a third party who may purchase Defendants' truck with the Marks on it, in connection with the manufacture, sale and distribution of goods and services in the State of North Dakota and elsewhere throughout the United States has caused and is likely to cause confusion as to the source of the goods and services in that the purchasers thereof have associated or will be likely to associate the goods and services with and as originating from or being sponsored or approved by or affiliated or connected with Plaintiff, to the detriment of Plaintiff.

63.     As a result of these acts of infringement and unfair competition by Defendants, Plaintiff has suffered and will continue to suffer irreparable injury to its reputation and goodwill, entitling it to injunctive relief and its costs of suit.

### SIXTH CLAIM FOR RELIEF
**(Breach of Contract)**

64.     Plaintiff realleges and incorporates by this reference each and every allegation contained in paragraphs 1-63 of this Complaint as if fully set forth.

65.     Under the Dealer Agreement, Plaintiff agreed to sell and Defendants agreed to buy tools so as to market and sell Plaintiff's Products and Services in the area of North Dakota set out in Section 1 of the Dealer Agreement.

66.     Under Paragraph 10 of the Dealer Agreement, Defendants recognized the validity of the Marks, agreed to have no interest in the Marks, and agreed to do no act that would impair Plaintiff's rights in the Marks, and that after termination of the Dealer Agreement, Defendants would cease all use of the Marks.

67.     Under Paragraph 17 of the Dealer Agreement, as a result of the termination of Defendants' Dealer Agreement, all of Defendants' non-exclusive rights to use the Marks immediately terminated.

68.     Despite such termination and letters to Defendants notifying Defendants that they no longer had any rights whatsoever to continue to use the Marks, and despite threat of legal action, Defendants continue to so use the Marks without authorization in connection with Defendants' promotion and sale of Defendants' truck and of goods and services in and affecting interstate commerce.

69.     Plaintiff has performed all conditions and covenants Plaintiff is required to perform under the Dealer Agreement, except those excused by Defendants' conduct.

70.     As a proximate result of Defendants' breach of the Dealer Agreement, Plaintiff has and will suffer irreparable damage and injury, entitling it to injunctive relief and its costs of suit.

## SEVENTH CLAIM FOR RELIEF
### (Temporary, Preliminary and Permanent Injunctions)

71.     Plaintiff realleges and incorporates by this reference each and every allegation contained in paragraphs 1-70 of this Complaint as if fully set forth.

72.     Beginning on or about November 13, 2022, the effective date of the termination of the Dealer Agreement, and continuing to the present time, Defendants wrongfully and unlawfully used Plaintiff's Marks without authorization in connection with Defendants' promotion, sale and distribution of Defendants' truck, goods and services in interstate commerce.

73.     Despite letters to Defendants notifying Defendants that they no longer have any rights whatsoever to continue to use the Marks, and despite threat of legal action, Defendants have refused and still refuse to refrain from their conduct.

74.     Defendants' wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiff in that Defendants' continued use of Plaintiff's Marks will deceive and mislead the consuming public and will cause harm to the goodwill and reputation of Plaintiff.  Defendants' conduct will further cause confusion, mistake and deception of the consuming public and will result in dilution of the Marks and diversion of sales from Plaintiff.

75.     Plaintiff has no adequate remedy at law for the injuries currently being suffered. It will be impossible for Plaintiff to determine the precise amount of damage that it will suffer if Defendants' conduct is not restrained and, Plaintiff may be forced to institute a multiplicity of actions to obtain adequate other relief and compensation for its injuries.

76.     Plaintiff seeks a temporary restraining order, preliminary and permanent injunctions restraining and enjoining Defendants, their agents, servants, employees, successors and assigns and all others acting in concert or participation with them as follows:

a.      From infringement of Plaintiff's Marks (U.S. Trademark Registration Numbers 747,209; 747,210; 1,139,026; 1,150,695; 1,163,457; 1,276,492; 1,276,565; 2,497,549; 2,514,179; 2,533,695; 3,456,834; 3,470,727; 3,494,755; 3,548,901; 3,855,015; 3,920,502; 4,449,249; 4,645,512; 4,649,553; 4,898,747 and 4,926,021) through the display of said Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendants' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or any other business equipment or marketing materials, or otherwise infringing upon Plaintiff's Marks;

b.      From unfairly competing with Plaintiff through the display of Plaintiff's Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendants' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or any other business equipment or marketing materials, or otherwise unfairly competing with Plaintiff;

c.     From engaging in unfair and deceptive trade practices through the display of Plaintiff's Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendants' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or any other business equipment or marketing materials, or otherwise engaging in unfair and deceptive trade practices;

d.     From infringing upon and competing unfairly with Plaintiff with respect to its common law and state rights in the Marks through the display of Plaintiff's Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendants' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or any other business equipment or marketing materials, or otherwise infringing upon and competing unfairly with Plaintiff with respect to its common law and state rights in the Marks;

e.     From dilution of Plaintiff's Marks through the display of Plaintiff's Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendants' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or any other business equipment or marketing materials, or otherwise diluting Plaintiff's Marks;

f.     From injuring Plaintiff's business reputation through the display of Plaintiff's Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendants' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or any other business equipment or marketing materials, or otherwise injuring Plaintiff's business reputation;

g.   From leading anyone to believe or representing, either orally or in writing, that Defendants are Plaintiff's dealer or distributor or otherwise professionally affiliated or associated with Plaintiff;

h.   For an order to surrender for destruction all decals, labels, stationery, business cards, invoices, packaging, containers, advertising materials, uniforms or any other business equipment or marketing materials which displays Plaintiff's Marks; and

i.   For temporary, preliminary and permanent orders prohibiting Defendants from selling or otherwise transferring ownership and/or possession of their truck with the Marks on it.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests relief against Defendants Kelly A. Walter and Kayla B. Walter as follows:

1.   Judgment that Plaintiff's Trademarks have been infringed and/or diluted by Defendants' willful and deliberate actions under 15 U.S.C. §1114, 15 U.S.C. §1123(c)(1) and Federal Common Law;

2.   Judgment that Defendants have committed deceptive trade practices in violation of N.D.C.C. chapters 47-22 and 47-25.

3.   Judgment that Defendants, and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with any of them, be enjoined preliminarily and permanently:

a.   From infringement of Plaintiff's Marks (U.S. Trademark Registration Numbers 747,209; 747,210; 1,139,026; 1,150,695; 1,163,457; 1,276,492;

1,276,565; 2,497,549; 2,514,179; 2,533,695; 3,456,834; 3,470,727; 3,494,755; 3,548,901; 3,855,015; 3,920,502; 4,449,249; 4,645,512; 4,649,553; 4,898,747 and 4,926,021) through the display of said Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendants' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or any other business equipment or marketing materials, or otherwise infringing upon Plaintiff's Marks;

b.     From unfairly competing with Plaintiff through the display of Plaintiff's Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendants' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or any other business equipment or marketing materials, or otherwise unfairly competing with Plaintiff;

c.     From engaging in unfair and deceptive trade practices through the display of Plaintiff's Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendants' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or any other business equipment or marketing materials, or otherwise engaging in unfair and deceptive trade practices;

d.     From infringing upon and competing unfairly with Plaintiff with respect to its common law and state rights in the Marks through the display of Plaintiff's Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendants' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or any other

business equipment or marketing materials, or otherwise infringing upon and competing unfairly with Plaintiff with respect to its common law and state rights in the Marks;

e.     From dilution of Plaintiff's Marks through the display of Plaintiff's Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendants' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or any other business equipment or marketing materials, or otherwise diluting Plaintiff's Marks;

f.     From injuring Plaintiff's business reputation through the display of Plaintiff's Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendants' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or any other business equipment or marketing materials, or otherwise injuring Plaintiff's business reputation;

g.     From leading anyone to believe or representing, either orally or in writing, that Defendants are Plaintiff's dealer or distributor or otherwise professionally affiliated or associated with Plaintiff;

h.     For an order to surrender for destruction all decals, labels, stationery, business cards, invoices, packaging, containers, advertising materials, uniforms or any other business equipment or marketing materials which displays Plaintiff's Marks; and

i.     For orders prohibiting Defendants from selling or otherwise transferring ownership and/or possession of their truck with the Marks on it.

4.     For an award of costs and reasonable attorney fees and such other and further relief as the Court may deem just and proper.

Respectfully submitted this 12th day of April 2023.

SANSTEAD LAW OFFICE, PLLC

By_____/s/ *Jonathan P. Sanstead*_____
JONATHAN P. SANSTEAD, #05332
Post Office Box 2596
Bismarck, ND 58502
(701) 220-2890
jon@sansteadlaw.com

Attorneys for Plaintiff